UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| SPRING LAKE PORK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:19 CV 18 CDP |
| | ) | |
| GREAT PLAINS MANAGEMENT, | ) | |
| L.L.C., et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SWINE MANAGEMENT SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on defendants Great Plains Management, Jan Huber, Jeff Dace, Jay Flora, and Harold Lee's (hereafter "GPM" or "defendants") Motion to Dismiss plaintiff Spring Lake Pork's ("SLP") Amended Complaint [ECF 52].  For the following reasons, I will grant defendants' motion only as to the claims of breach of express warranty (Count V) and RICO (Count VII).  I will deny the motion as to plaintiff's remaining claims.

## Factual and Procedural Background

Plaintiff SLP is a hog producer which does business near Vandalia, Missouri.  Defendant GPM is a hog farm manager headquartered in Creston, Illinois.[1]  On July 29, 2014, the parties entered into a five-year Management Agreement for a new hog farm owned by SLP.[2]  The Agreement provided that GPM would perform wide-ranging managerial services on the farm, including overseeing its sow breeding operations, training and supervising staff, and assisting in the initial construction and procurement of equipment on the farm.  Plaintiff alleges that GPM's mismanagement of the farm ultimately resulted in a failure to meet breeding productivity projections which were generated by third-party defendant Swine Management Services ("SMS"), a farm management consulting firm.[3]

Plaintiff terminated the Agreement with GPM on November 9, 2016, and filed suit against GPM in the Circuit Court of Ralls County, Missouri, on January

---

[1] Defendant Jan Heuber is the Manager of GPM, and Jeff Dace, Jay Flora, and Harold Lee are all current or former employees of GPM who provided services to SLP pursuant to the parties' Management Agreement.

[2] In assessing a 12(b)(6) motion, Courts may consider documents "necessarily embraced by the complaint," *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012), as well as documents "incorporated by reference, or integral to the claim."  *See Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013).  SLP explicitly incorporates the Management Agreement by reference in its Amended Complaint.  ECF 32 at ¶ 24.  Accordingly, I may consider the Management Agreement without converting GPM's motion into a motion for summary judgment.  *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

[3] The Court denied SMS's Motion to Dismiss GPM's Third-Party Complaint on December 3, 2019.  ECF 49.

2

31, 2019.  GPM removed the action to this Court on March 8, 2019, and moved to dismiss SLP's complaint on March 15, 2019.  On July 31, 2019, SLP moved for leave to file an Amended Complaint.  The Court granted SLP's motion to file an Amended Complaint on October 18, 2019, and denied GPM's motion to dismiss the original complaint as moot.  On December 17, 2019, GPM filed the instant Motion to Dismiss plaintiff's Amended Complaint.

Plaintiff brings its Amended Complaint against GPM and the individually-named defendants in eight counts: I) Fraud; II) breach of fiduciary duty; III) negligent misrepresentation; IV) breach of contract; V) breach of express warranty; VI) fraud in the inducement; VII) violation of the RICO Act, 18 U.S.C. § 1341 *et seq.*; and VIII) negligence.  Defendants move to dismiss only Counts I – VII for failure to state a claim upon which relief can be granted, contending generally that plaintiff's tort claims (and RICO claim) are inappropriate in light of the "purely commercial dispute" between the parties.  Fed. R. Civ. P. 12(b)(6); Motion to Dismiss, ECF 52 at pg. 4.

## Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*.  "[A] complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that plaintiff can prove no

set of facts in support of his claim that would entitle him to relief." *Levy v. Ohl*,

477 F.3d 988, 991 (8th Cir. 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46

(1957)).  However, the Court is not required to accept as true legal conclusions

which have been couched as factual allegations.  *See Brown v. Green Tree*

*Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016).

<u>**Analysis**</u>

*Counts I, III, and VI:  Fraud, Negligent Misrepresentation, and Fraud in the Inducement*

In Counts I, III, and VI, which are plead in the alternative to each other, SLP

alleges GPM made ten fraudulent representations before the parties entered into the

Agreement, and eight additional fraudulent representations after execution of the

Agreement.  To summarize, the pre-Agreement claims generally allege that the

defendants overstated their degree of expertise in managing large-scale swine

breeding operations using the specialized "NEDAP" livestock monitoring and

feeding system.  The post-Agreement claims allege that GPM mismanaged the

farm and made various misrepresentations pertaining to the success of the farm's

breeding operations.  SLP further alleges, "upon information and belief," that the defendants concealed data regarding SLP's farrowing and breeding operations.

In response to each claim, Defendants first assert that the allegedly fraudulent representations constitute non-actionable "puffery."  Defendants further argue that the economic loss rule bars recovery in tort for the alleged economic damages.  Finally, defendants contend that SLP has not plead its fraud claims with the requisite degree of particularity required by Federal Rule of Civil Procedure 9(b).  In response, SLP points to defendants' purported position of expertise to dispute defendants' contention that their representations could be construed as puffery.  SLP further asserts that its claim falls within an exception to the economic loss rule because defendants were providing "professional" management services.  Finally, SLP avers, in conclusory fashion, that its pleadings are sufficiently particularized to withstand preliminary scrutiny.

Counts I and VI, are nearly identical in substance.  The elements of an action for fraud and fraudulent inducement in Missouri are: "1) A representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) the hearer's right to rely thereon; and 9) the hearer's consequent and proximately

caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010).  A state law fraud claim must "comply with the heightened pleading standards of Rule 9(b), which require plaintiffs to plead 'the circumstances constituting fraud . . . with particularity.' Fed. R. Civ. P. 9(b)."  *BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908, 917 (8th Cir. 2007).

GPM's contention that the allegedly fraudulent representations constitute non-actionable "puffery" has little merit.  Most of plaintiff's allegations plainly do not describe mere "expressions of opinion" concerning expectations and predictions for the future.  *Arnold v. Erkmann,* 934 S.W.2d 621, 627 (Mo. Ct. App. 1996) (citation omitted).  Moreover, plaintiff alleges that the defendants fraudulently misrepresented themselves as having technical and managerial expertise in specific aspects of pig breeding operations, and that they later misrepresented several key metrics related to the farm's productivity.[4]  Under such circumstances as this, where the party alleged to have made fraudulent statements holds itself out as having specialized knowledge or expertise, alleged misrepresentations made to induce a less-informed party into contracting are

---

[4] For example, SLP alleges that GPM falsely represented that it "was familiar with the NEDAP system for identification and separation of sorting operations to ensure timely breeding of the sows," and that it relied on this representation in deciding to contract with GPM.  ECF 32 at ¶ 74(i).  Assuming the truth of SLP's allegation, it is not an "expression of opinion" to falsely claim familiarity with a specialized livestock monitoring and feeding system.

generally found to be actionable.  *See id*.  Accordingly, I will not dismiss SLP's claims on this basis.

GPM next argues that the economic loss doctrine bars SLP's fraud claims, asserting "[SLP] alleges nothing but economic loss and disappointed economic expectations pertaining to the parties' agreement."  Reply, ECF 75 at pg. 2.  In support, GPM notes that the subject matter of the alleged misrepresentations is referenced in the Agreement, and highlights the similarity between SLP's fraud and breach of contract claims.  GPM further asserts that SLP does not allege any special damages attributable to the alleged misrepresentations.  SLP's only defense is a citation to a case in this Court holding the economic loss rule inapplicable to claims "based on the negligent rendition of services by a professional."  *See JR14, LLC v. JetCorp Tech. Servs.*, No. 4:17 CV 1469 RWS (E.D. Mo. Aug. 29, 2017) (citation omitted).[5]

In Missouri, the economic loss doctrine prohibits a plaintiff "from seeking to recover in tort for economic losses that are contractual in nature."  *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,* 332 S.W.3d 184, 192 (Mo. Ct. App. 2010).  "A fraud claim is permitted only if it arises from acts that are separate and distinct from the contract."  *OS33 v. CenturyLink Commc'ns, L.L.C.,* 350 F. Supp.

---

[5] GPM offers a lengthy rebuttal to this argument in its reply brief.  Because I will deny GPM's motion to dismiss on a separate basis, however, I will not address this argument in this Order.

3d 807, 815 (E.D. Mo. 2018) (citation omitted).  In determining whether a fraud claim is independent of a contract claim for purposes of the economic loss doctrine, this Court assesses:  "1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract, and 2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud."  *Compass Bank v. Eager Road Associates, LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013) (internal citations omitted) (interpreting Missouri law).

SLP's Amended Complaint does not allege any special damages outside of the contract attributable to GPM's alleged misrepresentations.  But the failure to identify special damages alone is not dispositive at this stage.  *See, e.g. Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc*., 69 F. Supp. 3d 928, 933 (E.D. Mo. 2014).

"Most courts have allowed tort claims to go forward where they are based upon a misrepresentation that was outside of or collateral to the contract, such as many claims for fraudulent inducement."  *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (internal citation omitted) (interpreting Missouri law).   Where an alleged misrepresentation is explicitly incorporated into the contract or pertains to a party's *intent* to perform under a contract, the misrepresentation is more properly construed as a breach of contract claim;

however, where an alleged misrepresentation pertains to a party's *ability* to

perform under a contract, the misrepresentation may be actionable in fraud:

> But if [defendant] misrepresented its abilities, and thereby induced
> [plaintiff] to enter into the contract in the first instance, the purposes
> of the economic loss rule are no longer implicated, because in the
> absence of truthful information, [plaintiff] would not have been able
> to specify certain terms in the Agreement to protect itself from
> commercial risk.

*Id*. at 907.  Here, SLP alleges that before entering into the Agreement, GPM made

several fraudulent misrepresentations concerning its skill, experience, and abilities

in managing large-scale breeding operations using the NEDAP system.  The

Amended Complaint further alleges that SLP sought to acquire GPM's services

specifically because of its purported expertise with the NEDAP system.  *See* ECF

32 at ¶ 15.  Accepting SLP's allegations as true, it is plausible that SLP might not

have entered into the Agreement if it had known that GPM's expertise was

overstated.  Accordingly, because at least some of SLP's allegations are facially

independent of the Agreement and support a plausible claim for fraudulent

inducement, I will not dismiss Counts I, III, VI on the basis of the economic loss

rule.[6]

---

[6] Discovery may reveal that some of plaintiff's claims within each of Counts I, III, and VI—
particularly the post-Agreement allegations—are interwoven with the Agreement, conflict with
the Agreement, or pertain to GPM's intent to perform under the Agreement.  Plaintiff is
cautioned that these claims may therefore be subject to dismissal.  However, at this stage, the
Court "need not parse each of [SLP's] allegations to determine precisely which alleged
misrepresentations state a claim and which do not."  *Superior Edge*, 44 F. Supp. 3d at 908.

Finally, GPM contends SLP's fraud claims are subject to dismissal because they are not adequately particularized under Rule 9(b).  "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *United States ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 556 (8th Cir. 2006).  Among other things, the Amended Complaint alleges specific misrepresentations made via "telephone calls, emails, and face-to-face meetings" between SLP and defendant Hueber in Spring 2014 preceding the formation of the Agreement.  ECF 32 at ¶ 20-21.  These details are readily discoverable, and likely already known to both parties.  In light of this and the numerous other allegations describing interactions between the parties, plaintiff's claims are sufficient to withstand dismissal on the pleadings.

As for Count III, which SLP brings for negligent misrepresentation, I note it contains essentially the same factual allegations as in Counts I and VI, and that GPM moves to dismiss for essentially same reasons.  Missouri law recognizes distinct causes of action for fraudulent and negligent representation, and so SLP is permitted to allege both claims.  *Superior Edge*, 44 F. Supp. 3d at 903.  It is plausible that SLP could be found liable under either a theory of fraudulent misrepresentation or negligent misrepresentation based on the facts alleged.  As I

have already determined that the economic loss rule does not necessitate dismissal of plaintiff's fraud claim, and that its complaint is sufficiently particularized under Rule 9(b), I will deny GPM's motion to dismiss all of Counts I, III, and VI.

*Count II:  Breach of Fiduciary Duty*

SLP asserts Count II for breach of fiduciary duty against all defendants. Defendants move to dismiss, contending the Agreement between the parties was merely an arms-length business transaction which did not establish a fiduciary relationship.  In response, SLP argues that the existence of a fiduciary relationship can be inferred from the Agreement due to GPM's position of superiority and influence over the farm's operations.

To state a claim for breach of fiduciary duty, the plaintiff must establish 1) the existence of a fiduciary duty between the parties; 2) a breach of the fiduciary duty; and 3) damages resulting from the breach.  *Western Blue Print Co. v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012).  A fiduciary duty may arise from the parties' relationship or as a result of special circumstances.  *Pool v. Farm Bureau Town & Country Ins. Co. of Mo.*, 311 S.W.3d 895, 907 (Mo. Ct. App. 2010).  As summarized recently by this Court,

> A fiduciary duty is created when one party is subservient to the other; things of value, which are the property of the subservient party, are possessed or managed by the dominant party; there is a surrender of independence by the subservient party to the dominant party; there is a manipulation of the actions of the subservient party by the dominant

party; and there is a showing the subservient party places a trust and confidence in the dominant party.

*NTD I, LLC v. Alliant Asset Mgmt. Co*., LLC, 337 F. Supp. 3d 877, 887 (E.D. Mo. 2018) (citing *Chmieleski v. City Products Corp*., 660 S.W.2d 275, 294 (Mo. Ct. App. 1983)).

Drawing all reasonable inferences in SLP's favor, the Agreement plausibly supports the existence of a fiduciary relationship.  The Agreement is not indicative of a mere arms-length contract between two equally-situated parties—to the contrary, it provides GPM with authority to "manage, maintain and operate all aspects of the sow breeding operation and related activities in a manner and for costs which it reasonably determines to be prudent and consistent with [GPM's] standards and practices," subject only to SLP's "advice and comment."  ECF 32-1 at ¶ 4(B).  Moreover, based on the Agreement and SLP's allegations, GPM exercised a significant degree of influence and control over hiring, training, and supervising employees, advised SLP on the construction of the facility, and negotiated contracts on SLP's behalf.  Finally, in light of GPM's relative expertise in farm management and the NEDAP system, SLP unquestionably placed trust and confidence in GPM to manage the farm utilizing its superior technological and managerial expertise; indeed, the Agreement provides GPM with "all powers and

authority necessary and appropriate to perform and carry out its duties[.]"  *Id*. at ¶
4(H).  Defendants' motion to dismiss Count II is therefore denied.[7]

*Count IV: Breach of Contract*

In Count VI, a breach of contract claim, SLP alleges GPM failed to fulfill its
obligations under the Agreement in eleven ways.  ECF 32 at ¶ 103.  GPM moves to
dismiss, averring that it was not required to perform the duties that SLP alleges it
breached under the terms of the Agreement.[8]  GPM further contends that because
the alleged breaches stem from terms which are not contained in the Agreement,
SLP's claims are independently barred by the Agreement's integration clause.
ECF 32-1 at § 12(C).

Under Missouri law, a breach of contract action includes the following
essential elements: 1) The existence and terms of a contract; 2) that plaintiff

---

[7] Because the duties and powers of the individually-named defendants are not clear from the
pleadings, I will allow this claim to proceed against them in their individual capacities as well, to
the extent SLP seeks to bring separate claims; however, some or all of the claims against the
individual defendants may be subject to dismissal upon further discovery.

[8] GPM also challenges the authenticity the Agreement attached to SLP's Amended Complaint,
noting it contains a handwritten amendment which allegedly was not contained in the parties'
original Agreement.  The Court is aware that "a genuine dispute as to the authenticity of a
document claimed to be embraced by the pleadings may require conversion of a motion to
dismiss into one for summary judgment."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 527
(8th Cir. 2017).  GPM acknowledges that the remainder of the Agreement attached to SLP's
Amended Complaint, absent the handwritten language, is a true and accurate copy of the parties'
contract; further, the handwritten amendment does not appear to be relevant to any issue in the
instant motion.  Accordingly, out of caution, I will not consider the disputed handwritten
amendment, and instead consider only the undisputed text of the Agreement.  I need not convert
GPM's motion to dismiss into a motion for summary judgment on this basis.

performed or tendered performance pursuant to the contract; 3) breach of the contract by the defendant; and 4) damages suffered by the plaintiff.  *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010) (citation omitted). SLP has facially plead each requisite element to support its claim; GPM disputes only the adequacy of the first element, or whether the terms of the Agreement impose the contractual duties which GPM allegedly breached.

Upon review of the Agreement, I find that several of the alleged breaches specified in SLP's Amended Complaint, specifically ¶ 103(a), (b), (c), (d), (g), (h), and (i), describe breaches of duties which could reasonably be drawn from GPM's contractual obligations set forth in § 4(B), (C), (L), and the preamble of the Agreement.  GPM's motion to dismiss Count IV is therefore denied as to these claims.

The remaining fact-specific allegations are not explicitly set forth in the Agreement.  However, because I have already determined that SLP states a claim for fraudulent inducement, these claims are not necessarily barred by the Agreement's integration clause:  "The rule that all prior and contemporaneous oral agreements and representations are merged in the written contract entered into by the parties does not apply to fraudulent representations made for the purpose of inducing a party to enter into such contract."  *Riley v. Lucas Lofts Inv'rs, LLC*, 412 S.W.3d 285, 293 (Mo. Ct. App. 2013) (citation omitted).

Finally, GPM argues that SLP's breach of contract claim should be dismissed because of an exculpatory provision in the Agreement which purports to limit GPM's liability for any undertakings made "while exercising its good faith best efforts." *See* ECF 32-1 at § 4(K). In assessing a 12(b)(6) motion, the Court reviews only the sufficiency of the plaintiff's complaint. Whether GPM exercised good faith efforts in the performance of its duties under the Agreement is an affirmative defense which is not properly considered by the Court at this stage. Accordingly, GPM's motion to dismiss Count IV is denied.

*Count V: Breach of Express Warranty*

SLP brings Count V for breach of express warranty against GPM only. The claim mirrors the factual allegations in its fraud claims. GPM moves to dismiss, suggesting it was not a "seller of goods" and thus made no express warranties which could support SLP's claim. In response, SLP cites Missouri Approved Jury Instruction 25.07, contending that GPM's offer of "management services" could be replaced for "goods" within the jury instruction in order to support its alleged breach of warranty claim. M.A.I. 25.07.

To prevail on a claim of breach of express warranty, plaintiffs must demonstrate:

> 1) that there was a sale of goods; 2) the seller made a statement of fact about the kind or quality of [ ] those goods; 3) the statement of fact was a material factor inducing the buyer to purchase the goods; 4) the goods did not conform to that statement of fact; 5) the nonconformity

15

injured the buyer; and 6) the buyer notified the seller of the nonconformity in a timely fashion.

*Pfitzer v. Smith & Wesson Corp.,* No. 4:13-CV-676-JAR, 2014 WL 636381, at *1 (E.D. Mo. Feb. 18, 2014) (citation omitted).  SLP does not allege that GPM sold it any "goods"—by its own admission, SLP purchased only GPM's "management services," and SLP offers no legitimate support for its contention that the sale of these services could support a breach of warranty claim.[9]  Count V is dismissed.

*Count VII: Violation of the RICO Act*

SLP brings Count VII, a civil claim under the federal RICO Act, 18 U.S.C. § 1962(c) *et seq*., against all defendants.  Similar in substance to its pre-Agreement fraud claims, SLP contends that the defendants engaged in a common enterprise to defraud SLP into procuring their services, and that the alleged misrepresentations pertaining to their managerial expertise constitutes a pattern of racketeering.  GPM moves to dismiss on several grounds, contending that the claim lacks requisite particularity and that SLP fails to properly allege a pattern of racketeering.

"RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)).  However, RICO "does not cover all instances of

---

[9] The cited UCC jury instruction is both non-binding and irrelevant, as plaintiff did not bring its breach of express warranty claim under the UCC.

16

wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).  The essential elements of a § 1962(c) action are:  "1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex, Co., Inc.,* 473 U.S. 479, 496 (1985) (footnote omitted).  A failure to show evidence of any one element is fatal to the entire claim.  *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1028 (8th Cir. 2008).

Assuming *arguendo* that plaintiff properly alleged a RICO enterprise, the claim is nonetheless fatally flawed because it does not state a cognizable "pattern" of racketeering.  "A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity." *Crest Const*., 660 F.3d at 356.  "To satisfy the RICO continuity element . . . a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity)." *Id*. (quoting *Craig Outdoor,* 528 F.3d at 1028.).

Here, SLP alleges that the predicate acts for the alleged fraud—the alleged misrepresentations which induced SLP to enter into the Agreement—occurred between "the spring of 2014 and July of 2014."  ECF 23 at ¶ 131.  This closed-

17

ended period, while somewhat vague, is legally insufficient to be considered a "substantial period of time." *Id.* (less than seven month period insufficient to establish continuity); *United States v. Hively,* 437 F.3d 752, 761 (8th Cir. 2006) (holding closed-ended continuity "can be shown by related acts continuing over a period of time lasting at least one year . . . ."). Plaintiff's entirely unsupported allegation of "ongoing racketeering activity" is not sufficient to support a separate claim under a theory of open-ended continuity, and SLP has not alleged any scheme to defraud after execution of the Agreement.  Count VII is dismissed.

As there are no remaining issues,

**IT IS HEREBY ORDERED** that Defendant Great Plains Management, Jan Hueber, Jeff Dace, and Jay Flora's Motion to Dismiss [52] is **GRANTED** only as to Plaintiff Spring Lake Pork's Counts V and VII; the motion is denied as to Counts I, II, III, IV, and VI.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2020.

18