**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SPRING LAKE PORK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-18 HEA |
| | ) | |
| GREAT PLAINS MANAGEMENT, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SWINE MANAGEMENT SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel, [Doc. No.

149], and Defendants Jeff Dace, Jay Flora, Great Plains Management, LLC, Jan

Huber, Harold Lee's Motion to Compel, [Doc. No. 161]. For the reasons set forth

below, Plaintiff's Motion to Compel will be granted in part and denied in part,

Defendants' Motion to Compel will be granted.[1]

---

[1] Neither party advises the Court whether the parties have "met and conferred" in an effort to resolve these motions prior to their filing.  The Court reminds the parties of Local Rule 3.04: Motions Concerning Discovery and Disclosure.
(A) The Court will not consider any motion relating to discovery and disclosure
unless it contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere

## Facts and Background

Plaintiff Spring Lake Pork, LLC ("SLP") is a hog producer doing business near Vandalia, Missouri. Defendant Great Plains Management, LLC ("GPM") is a hog farm manager headquartered in Creston, Illinois. Defendant Jan Heuber is the Manager of GPM, and Defendants Jeff Dace, Jay Flora, and Harold Lee are all current or former employees of GPM who provided services to SLP pursuant to the parties' Management Agreement (collectively with GPM, "Defendants"). Third-Party Defendant Swine Management Services ("SMS") is a farm management consulting firm which provided services to SLP.

This case arises out of the business relationship between SLP and GPM concerning SLP's new hog farm and governed by a five-year Management Agreement executed in July 2014. The Agreement provided that GPM would perform wide-ranging managerial services on the farm, including overseeing its sow breeding operations, training, and supervising staff, and assisting in the initial construction and procurement of equipment on the farm. The farm utilized an NEDAP system for breeding, electronic feeding, automatic heat detection and

---

efforts to resolve their dispute, counsel are unable to reach an accord. This statement also shall recite the date, time and manner of such conference, and the names of the individuals participating therein, or shall state with specificity the efforts made to confer with opposing counsel.

separation of the sows and gilts. SLP's farm was only the second farm in the United States to use the NEDAP system.

After SLP's hog farm failed to meet breeding productivity projections generated by Third-Party Defendant SMS, Plaintiff terminated the Agreement with GPM early, on November 9, 2016. Plaintiff alleges that GPM's mismanagement of the farm ultimately resulted in deficient performance of the farm.

The Court previously dismissed two counts of SLP's Amended Complaint on June 30, 2020.  The remaining six counts reflected in Plaintiff's Amended Complaint against GPM and the individually named defendants are: Count I, fraud; Count II, breach of fiduciary duty; Count III, negligent misrepresentation; Count IV, breach of contract; Count VI, fraud in the inducement; and Count VIII, negligence. GPM's third-party complaint against SMS alleges that SMS was negligent in managing SLP's farm and seeks indemnity and/or contribution in the event it is found liable to Spring Lake.

Several discovery issues are now before the Court: Plaintiff's Motion to Compel and Motion to Quash Portions of Second Amended Notice of Deposition to Dr. Stephen D. Patterson; Movant Stephen D. Patterson's Motion for Joinder in Plaintiff's Motion to Quash; and Defendants' Motion for Sanctions and For Rule to Show Cause, Motion to Expedite Briefing of Motion for Rule to Show Cause & Sanctions, and Motion to Compel.

## Discussion

**Standards Governing Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in

civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within the scope of discovery need
> not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 contains specific limitations relative to objections

to providing discovery:

> (C) *When Required*. On motion or on its own, the court must limit the
> frequency or extent of discovery otherwise allowed by these rules or by local
> rule if it determines that:
>     (i) the discovery sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
>     (ii) the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or
>     (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

If a party fails to respond to a proper request for discovery, or if an evasive

or incomplete response is made, the party requesting the discovery is entitled to

move for a motion compelling disclosure after having made a good faith effort to

resolve the dispute by conferring first with the other party. See Fed. R. Civ. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020 update). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Id*. (quoting *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. But these considerations are not inherent barriers to discovery.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in

the case, is required." *Woodmen of the World*, 2007 WL 1217919, at *1 (citing

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation

that information might be useful will not suffice; litigants seeking to compel

discovery must describe[,] with a reasonable degree of specificity, the information

they hope to obtain and its importance to their case." *Woodmen of the World*, 2007

WL 1217919, at *1 (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir.

1972)).

**Plaintiff's Motion to Compel [ECF.  #149]**

Plaintiff SLP moves the Court to compel responses to its Second Requests

for Production to GPM and its Second Request for Production to Defendant

Hueber, and to overrule GPM's Objections to the Second Amended Notice to Take

Video Deposition Duces Tecum of GPM's 30(b)(6) representative. Plaintiff

identifies three topics in dispute: 1) damages GPM seeks in its counterclaim

against SLP; 2) written agreements and actions regarding GPM's management of

other farrowing farms; and 3) corporate documents concerning GPM's ownership

including members' agreements, operating agreements, succession plan, buy-sell

agreements, insurance agreements and Hueber's estate plans.

GPM's counterclaim damages

SLP claims that GPM and Hueber are withholding information regarding

counterclaim damages and argues that GPM should be compelled to produce

financial documents for SLP's review, and that Hueber should be required to testify to his knowledge of GPM's alleged damages. SLP asserts that the protective order permits the disclosure of sensitive financial information, and that it would be unduly burdensome to wait for the records until after GPM's damages expert discloses his report and information by the September 10, 2021 deadline.

In response, GPM states that it has not refused to disclose the information sought by SLP, rather it is waiting to do so until its damages expert has formulated an opinion. GPM argues that is does not know on what documents their expert will rely and that a premature response threatens the disclosure of protected work product and mental impressions relating to counsel's preliminary damages calculations. As for Hueber's testimony, GPM asserts that he is a lay witness, not a damages expert, so any testimony concerning damages would be inadmissible and superseded by the damages expert. To address SLP's concerns about having limited time to review and analyze GPM's damages-related financial records, GPM proposes that the Court order GPM to produce financial records to SLP on a rolling basis, at the same time that GPM provides the records to its expert.

GPM is not withholding the amount or calculation of damages, it merely asserts that because the calculation requires an expert opinion, the information will be produced at the expert report deadline. Moreover, GPM offers to contemporaneously provide SLP with the documents that it provides to damages

expert, so that SLP can review the records sooner rather than later. GPM's

proposal is more than sufficient. *See, e.g., Kent v. Seterus, Inc.*, No. 4:17-CV-

00257-DGK, 2018 WL 703287 at *2 (W.D. Mo. Feb. 2, 2018). SLP's motion to

compel counterclaim damages information is denied at this time. The Court agrees

with GPM's rolling basis approach and orders same.

<u>GPM's management of other farms</u>

SLP seeks documents and testimony relating to GPM's management of at

least thirteen other farrowing farms between January 1, 2015 and November 9,

2016, including documents and testimony regarding any outbreaks of Porcine

Reproductive and Respiratory Syndrome (PRRS) during that time period. SLP

asserts relevance because GPM represented itself as a "skilled and experienced"

farm manager, and the terms of the Management Agreement required GPM to

perform "consistent with the standards and practices [GPM] employs for similar

operations it manages." SLP asserts that information about PRRS at any of GPM's

other managed farms is discoverable due to GPM's affirmative defense that SLP

"[a]llow[ed] PRRS to develop among the pig population."

GPM objects to the requests as irrelevant, overly burdensome, not

proportionate to the needs of the case, vague and ambiguous, and redundant. First,

GPM argues that because SLP's farm is the only farm it has managed with the

NEDAP monitoring system, the other farms it managed without NEDAP are not

"similar operations to SLP, and thus information about those farms is irrelevant. GPM also argues that SLP has already deposed the individual defendants who actually managed the other farms. Finally, GPM states that its counterclaim allegation regarding PRRS does not concern the introduction of PRRS, but rather the disease spread once it had been introduced to the herd, so information regarding the introduction of the disease isn't relevant.

Under the broad scope of Rule 26(b), SLP's requests concerning GPM's management of other swine farms is relevant and discoverable. The Management Agreement clearly states:

> [GPM] with the Owner's advice and comment…shall manage, maintain and operate all aspects of the sow breeding operation and related activities conducted at the Facility in a manner and for costs which it reasonably determines to be prudent and consistent with the standards and practices the Manager [GPM] employs for similar operations it manages…

GPM's present contention that it managed no farm comparable to SLP's farm is at odds with the language of the Management Agreement, which expressly contemplates "similar operations." This consideration is expressly included in the parties' Management Agreement even though the parties knew that an NEDAP system would be used. For that reason, written agreements and management agreements between GPM and other farrowing farms during the time period specified are discoverable. Discovery concerning the termination of GPM's services by these farrowing farms is certainly relevant and not overly burdensome

or disproportionate to the needs of the case, and therefore is discoverable as well.
To the extent that GPM asserts requested documents do not exist or that it has
already produced these documents in association with the depositions of the
individual defendants, it need only respond accordingly.

GPM's affirmative defense regarding PRRS, a communicable reproductive
disease, in SPM's herd certainly justifies Plaintiff's discovery requests regarding
the movement of GPM employees between SLP and other farms with PRRS.
Although GPM argues that the only relevant aspect of the PRRS outbreak in SLP's
pig population was the spread of the disease, the Court fails to see how the manner
of introduction of PRRS to the SLP population could be irrelevant. Defendants will
be compelled to respond to Plaintiff's discovery requests concerning PRRS at other
farms managed by GPM.

GPM's corporate and Hueber's estate document

SLP also moves this Court to compel GPM to provide "information about
Buy-Sell Agreements, Member Agreements, Operating Agreements, Key-Man
Life Insurance Policies of GPM, and similar estate planning documents of
Hueber," due to Hueber's role as a one-third owner and manager of GPM and his
reported illness. Essentially, SLP seeks information on the division of management
responsibilities among GPM's owners and information on Hueber's estate and
successors in interest in the event Hueber dies.

GPM contends that Hueber's life insurance and estate planning documents are not relevant to any claim or defense and therefore outside the scope of discovery. GPM also states that it already informed SLP that it is willing to discuss the company's management, organization, division of responsibilities at Hueber's deposition, and that it is willing to produce a corporate tree showing GPM's organizational structure and hierarchy. However, GPM objects to SLP's requests for information regarding succession plans, bylaws, amendments, buy-sell agreements, member agreements, operating agreements, key-man, and other life insurance policies as overly broad.

The Court agrees with GPM's position, particularly its statement that "any party could pass away prior to the resolution of any suit, and that does not make estate plans or business deals relevant." Plaintiff's fixation on Hueber's mortality and the disposition of his assets and ownership interest thereafter is unwarranted and irrelevant to the litigation. The law provides adequately for situations in which a party dies during the pendency of litigation; the issue need not be addressed in discovery.

For the reasons discussed above, Plaintiff's Motion to Compel [ECF #149] will be granted only as to Plaintiff's requests regarding other farrowing farms managed by GPM during the periods specified in Plaintiff's discovery requests. It will be denied as to all other requests.

**Defendants' Motion to Compel [ECF  # 161]**

The subject of Defendants' Motion to Compel are two requests for records that were included with Defendants' 30(b)(6) deposition notice to Plaintiff SLP: Rider Request to Produce #5 and Rider Request to Produce # 9. Request # 5 sought "All documents concerning any insurance payments, applications for insurance payments, and investigations and/or determination of cause related to the fire that occurred on Spring Lake Pork in or around May of 2018." Request # 9 sought "All documents reflecting the revenue, profits, and expenses of Spring Lake Pork prior to, during, and subsequent to its relationship with Great Plains."

Request # 5 – Insurance Related Records

Defendant GPM asserts that it seeks records related to a 2018 fire at SLP and related insurance claims on grounds that the records could reveal information about the farm's productivity and revenue after the Management Agreement with GPM was terminated and about the cause of the fire. GPM further describes that revenue loss valuations performed by SLP's insurance carrier could show that SLP was no more successful in meeting production goals after they terminated GPM, indicating that SLP's failure to meet goals while GPM managed it was not due to GPM's negligence, but some other circumstances outside GPM's control. As for records relating to the cause of the fire, GPM states that these might show that

"stary voltage issues," which GPM claims it complained of to SLP during their management as hampering production, were indeed present at SLP's farm.

The records requested by Defendants regarding the fire at SLP's farm and related insurance claims are clearly related to Defendants' defenses and counterclaim, as fully described in their motion. Therefore, Plaintiff will be compelled to respond to Defendants' Request # 5.

Request # 9 – Revenue, Profits, and Loss Records

Defendants complain that although Plaintiff SLP provided tax returns, profit and loss statements, loan information, expense invoices and similar documents for dates through December 2017, SLP did not produce any such records dated subsequent to December 2017. Defendants contend that even though SLP is cutting off damages as of December 2017, post-2017 records are relevant because SLP suffered a PRRS outbreak in 2018 that caused production to drop and SLP to see negative earnings. As with Request # 5, Defendants believe this information may show that the low production at SLP was not the result of negligence on GPM's part.

The performance of SLP's farrowing farm after GPM's management was terminated is relevant to Defendants' defenses and counterclaim. The records sought in Request # 9 are discoverable, and SLP will be compelled to produce them.

**Conclusion**

For the reasons above, Plaintiff's Motion to Compel will be granted as to requests for information concerning GPM's management of other farrowing farms but denied in all other respects. Defendants' Motion to Compel will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel [ECF #149] is **GRANTED** as to information concerning GPM's management of other farrowing farms and is **DENIED** as to all other requests.

**IT IS FURTHER ORDERED** that Plaintiff's request for sanctions is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel [ECF #161] is **GRANTED**.

Dated this 20th day of July, 2021.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE